Thornton *v.* Moody & al.

---

## THORNTON *vs.* MOODY & *al.*

A promissory note, when offered in evidence in an action brought thereon, by the payee against the makers, had an indorsement upon it of the plaintiff's name, with the words " without recourse to me;" — *Held,* that such indorsement, though remaining *uncancelled,* constituted no objection to the plaintiff's recovery.

In such action the officer who served the writ being a witness, and stating that his orders in regard to the service were in writing, which he had not then in his possession, was not permitted to testify what those orders were.

THIS was *assumpsit* on a promissory note of hand, given by *Edmund Moody, Joshua Moody,* and *Waldo Hill,* to the nominal plaintiff. *Hill* died after the commencement of the action, and *Joshua Moody* was defaulted: but *Edmund Moody* defended, on the ground that the note had been paid by the two last named defendants, and that the suit was prosecuted for their benefit.

Thornton *v.* Moody & al.

The officer who served the writ, on being inquired of, as to whose orders he acted under in making such service, stated that he acted under the orders of *Messrs. J. & E. Shepley,* and of *Moody & Hill,* two of the defendants — that the orders of the latter were in writing, and that they were not then in his possession — whereupon the presiding Judge, on objection made, ruled that no testimony could be received from the officer in regard to the contents of said writing.

The note produced as the basis of the action had the following indorsement thereon, *viz.* " *Without recourse to me, James B. Thornton.*" And it appeared that the note had been left by said *Thornton* with the Cashier of a Bank, for collection, and that on the 29th of *November,* 1833, after the note was due, he received orders from *Thornton* to deliver the note to *Messrs. J. & E. Shepley,* but before doing it, to write over his name, which was then on the back of the note, the words " without recourse to me." The Cashier made the indorsement and delivered the note as directed.

The counsel for the defendant contended, that while such indorsement remained uncancelled, the action could not be maintained. But the Chief Justice ruled otherwise, and the case came up on exceptions to his opinion.

*Fairfield,* for the defendant, contended that the special indorsement and delivery of the note, under the circumstances proved, in connection with the fact that the officer serving the writ was acting under the orders of persons other than the nominal plaintiff, were sufficient to show an actual sale and transfer of the property in the note. Or at all events, that the plaintiff was bound to explain these circumstances — to repel the inference of law by proof.

He also contended, that the proof of the circumstances accompanying the indorsement of the note, and service of the writ, the action could not be maintained while the indorsement remained uncancelled. In *Theed* v. *Lovell,* 2 *Strange,* 1103, the report of the case is thus: " When the note was delivered in, the plaintiff's name was upon it, and the Chief Justice *permitted* it to be stricken out in Court, it being only an indorsement in blank."

Thornton *v* Moody & al.

Here it seems the *indorsement* was an obstacle which it was necessary to remove before a recovery could be had.

So also in *Norris' Peake*, 340, citing a case from 2 *Dallas*, 144, it is said, "In an action by the indorser against the acceptor of a bill of exchange which had been indorsed several times, the *mere possession* of the bill was not considered evidence that the indorser had paid the subsequent indorsee, *which must be proved to entitle him to recover.*" On the authority of this case then, if *Thornton* had the *possession* of this note, (which is denied, the mere bringing the action in his name being no *proof* of it,) still he is not entitled to recover, without showing payment to the subsequent indorsee, (for an indorsement necessarily supposes an indorsee) or at least that the indorsement had been *cancelled* by right or by wrong.

He also cited *Pintard* v. *Tackington*, 19 *Johns.* 104; *Ellsworth* v. *Brewer*, 11 *Pick.* 320.

*J. & E. Shepley*, for the plaintiff.

Mellen C. J. — This case presents two questions: 1. Was the parol evidence, offered to prove the contents of the paper mentioned by the officer, properly excluded; and 2. Did the Judge decide correctly in declining to give the instructions requested.

As to the *first* point there seems to be no room for doubt. *Starkie, vol.* 1, *page* 102, says, "There is but one rule of policy, which operates as a general principle of evidence — this rule or principle consists in requiring the best evidence to be adduced which the case admits of; or rather, perhaps, more properly speaking, in rejecting secondary and inferior evidence, when it is attempted to be substituted for evidence of a higher and superior nature." Again, *page 390*, he says, "It is a universal rule that the contents of a writing cannot be proved by a copy; still less by mere oral evidence, if the writing itself be in existence and attainable." In the present case, the officer said the writing was in existence and in his possession at home. It might have been in Court, had the defendant taken proper measures to obtain it. Even if the officer had proved that it was in the plaintiff's possession, parol evidence of its contents could not have been admit-

ted, unless notice to produce it on trial had been seasonably given. The *first* objection is overruled. As to the *second* point, there seems to be as little doubt as there is respecting the first. " A note indorsed *in blank* is like one payable to bearer, and passes *by delivery*, and the *holder* may constitute himself, or any other person, assignee of the bill." 3 *Kent's Com.* 59. " In the case of blank indorsements, *possession* is evidence of title," 60. " An indorsement in *blank*, is made by the mere writing of the indorsor's name on the back of the bill, without the mention of the name of any person in whose favor the indorsement is made. It has been adjudged that *such* an indorsement does not *transfer the property* and *interest* in the bill to the indorsee, without some *further* act, but it gives him, as well as any other person to whom it is afterwards *transferred*, the power of constituting himself assignee of the beneficial interest, by filling it up payable to himself, which he may do at the time of trial. *Chitty on Bills*, 117, *Ed. of* 1807. In the case of *Clerk* v. *Pigot*, 12 *Mod.* 192, it appears that *Dunning* drew a bill on *Pigot*, payable to *Clerk* or order; *Clerk* indorsed *his name* thereon and sent it to *Kean* to present it for acceptance; and for nonpayment, according to the acceptance, the action was brought. The defendant contended that the action could not be maintained in the name of *Clerk*, because by his indorsement, the property of the bill had been transferred to *Kean*. The Court did not sustain the objection. *Kean* not having filled up the indorsement, was considered as acting as the agent of *Clerk*; and the action was maintained. In *Theed* v. *Lovell*, 2 *Strange*, 1103, the note declared on, when offered, appeared to have the plaintiff's name indorsed upon it; and it was erased by leave of Court — *it being only an indorsement in blank.* " Upon a transfer, whether by *indorsement* or bare delivery, the bill must, of course, be *delivered* to the assignee." *Chitty on bills*, 121. Let us now apply these principles to the facts of the case before us. In the first place, it does not appear that the *name* of *Thornton* was on the note when the action was commenced, or when, or for what purpose it was placed there. It was never filled up as an indorsement to any one, claiming any interest in the note. In the next place, it does not appear to have been *delivered* to any one as assignee or indorsee. In the

next place, it does appear that the note was lying in the bank for sometime after the suit was commenced; and was withdrawn from thence by the *order of the plaintiff*, and delivered to his attorneys for the further prosecution of the action; and they produced it on trial. We have no *scintilla* of proof that any person has an interest in the note, derived from *Thornton.* If, when a note, indorsed in blank, is in possession of a third person, such possession is evidence of *his* title, why is not the possession of the note by the person whose name is so indorsed upon it, evidence of *his continued* title to it? Unless such be the case, on what principle can a court of law be authorized to allow the name of the indorser to be erased, as was done in the above case of *Theed* v. *Lovell?* Yet no objection lies against such a proceeding. The authorities cited by the defendant's counsel do not seem to have any special application, inasmuch as no *contract* has been created by the act of writing the name of the plaintiff on the back of the note, he still holding it in his possession and under his control. *Two* persons, at least, are necessary to the formation of a contract. In the case before us we can discover only *one.* We are of opinion that the Judge was correct in declining to give the requested instruction, and accordingly there must be

*Judgment on the verdict.*